In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-1442

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SYLVIA HOLLINS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 07-CR-20006 — **Harold A. Baker**, *Judge.*

———————————

ARGUED SEPTEMBER 12, 2016 — DECIDED FEBRUARY 1, 2017

———————————

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES,
*Circuit Judges.*

WOOD, *Chief Judge*. This case comes to us for the second
time after a district court revoked Sylvia Hollins's supervised
release stemming from her 2007 federal conviction. In the first
appeal, we granted a joint motion for summary reversal and
remand for resentencing. See *United States v. Hollins*, No.
15-3750 (7th Cir. Jan. 27, 2016). The district court obliged with
a resentencing hearing held on February 25, 2016. Hollins has

appealed from the new sentence, which she asserts is tainted by several procedural flaws. We find no error, however, and so we affirm the district court's judgment.

**I**

Hollins has struggled for nearly 30 years against her addiction to crack cocaine. Unfortunately, but predictably, this has led to a long string of criminal convictions involving incarceration, stints in various treatment centers, and home confinement. In the present case, she pleaded guilty in 2007 to distributing five or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). She was sentenced to 92 months' imprisonment and eight years of supervised release. The Bureau of Prisons released her in November 2012.

Over the next year, Hollins tested positive for cocaine numerous times and was convicted of theft in the Champaign County (Illinois) Circuit Court. She received a very light sentence—three days in jail—but this conviction prompted the district court to modify her conditions of supervised release. It required her to spend 120 days in community confinement in a local jail, so that she could "get clean" and "regain focus of her life." The court's hopes were unrealized. Following her release from the jail in December 2013, Hollins again tested positive for cocaine use on several different occasions. Once again, the district court modified her supervised release and gave her another 120 days of community confinement at the Prairie Center, an addiction treatment facility. While at the Center she tested positive for cocaine and was returned to the county jail for the rest of her sentence.

In May 2014, still concerned about her drug use, the district court modified Hollins's supervision conditions to add

six months of in-home confinement. Hollins began to serve that sentence upon her release from the county jail in June 2014, but she failed again. She was arrested for retail theft in Urbana, Illinois, in September 2014, during the term of her in-home confinement. The district court thereupon placed her in community confinement for 120 days and stayed her in-home confinement. She completed the community confinement on February 4, 2015, and resumed her in-home confinement on February 27, 2015.

On March 16, 2015, Hollins pleaded guilty in state court to the retail theft charge stemming from her September 2014 arrest and was sentenced to one year's imprisonment in the custody of the Illinois Department of Corrections (IDOC)—a sentence that was to start on May 13, 2015. Between February and May 2015, Hollins failed to report for drug testing on three occasions. She attended outpatient substance abuse and mental health counseling sessions between February and May, but she was discharged for failing to participate successfully in the program; the discharge was dated May 13, 2015, the day she reported for her Illinois sentence. At that point she had 31 days of her federal in-home confinement remaining to be served.

While Hollins was in IDOC's custody, her probation officer petitioned the district court to revoke her supervised release based on her two retail theft convictions. The district court issued a warrant and Hollins was detained pending her revocation hearing after IDOC released her in November 2015. The district court conducted the first revocation hearing on December 7, 2015. On January 26, 2016, we granted the parties' joint motion for summary reversal and remanded for resentencing in light of *United States v. Boultinghouse*, 784 F.3d

1163, 1178 (7th Cir. 2015). The district court conducted the re-sentencing hearing on February 25, 2016. At that hearing, the government recommended a 24-month sentence, Hollins argued in favor of a 12-month sentence, and the district court imposed a 28-month sentence. The district court issued an order on February 26, 2015, clarifying the reasons behind its decision to revoke supervised release and impose the additional prison time.

## II

Hollins argues that the district court procedurally erred at the resentencing hearing by failing adequately to address her arguments in mitigation, relying on the probation officer's recommendation, and failing adequately to address the factors listed in 18 U.S.C. § 3553(a).

We review challenges to the sentence imposed at a revocation hearing under a highly deferential standard comparable to that with which we review sanctions imposed by prison disciplinary boards. *Boultinghouse*, 784 F.3d at 1177. We will affirm the district court's chosen sentence as long as it is not "plainly unreasonable." *Id.* When revoking supervised release, a district judge must consider the Sentencing Guidelines policy statements, which are found in U.S.S.G. Chapter 7, Part B. The judge must also consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they apply to revocations. See 18 U.S.C. § 3583(e).

The policy statements are intended to anchor the district court's considerations during revocation proceedings. They have always been advisory, and so a judge is free to reject them. The judge must, however, provide some explanation

for her choice, in order to enable the appellate court to conduct a meaningful review both for procedure and substance. *United States v. Robertson*, 648 F.3d 858, 859–60 (7th Cir. 2011). The further the sentence departs from the relevant Guideline provisions, the more imperative it is for the court to detail its justification. *Boultinghouse*, 784 F.3d at 1178.

A

Hollins contends that the district court failed to say enough about her principal arguments in mitigation: her request for a "discount" based on time she already had served in connection with the same conduct; and her argument that she finally had been undergoing successful outpatient drug treatment and thus a lower sentence was suitable.

At a revocation hearing a defendant is entitled to "an opportunity to make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(b)(2)(E). We have cautioned district judges "not to predetermine the appropriate punishment" and reminded them of their obligation to "approach revocation and sentencing hearings with an open mind and consider the evidence and arguments presented before imposing punishment." *United States v. Dill*, 799 F.3d 821, 825 (7th Cir. 2015). In the sentencing context we have held that a district court must address all of a defendant's principal arguments, as long as they are not so weak that they do not merit discussion. *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009).

The district court provided Hollins the opportunity to present her mitigation arguments at the hearing. She stated that she was in the longest period of sobriety since she began using drugs, and that for a great portion of this time she was out of

custody and doing outpatient treatment. She also pointed out that she had been in custody for multiple-month periods for the theft convictions that partly justified the revocation.

After prompting by the government, the district judge responded to the argument about Hollins's sobriety, contending that he knew "too much about recidivism … and how it occurs." He then asked Hollins if she wanted a more detailed explanation in light of her arguments, at which point Hollins's counsel again noted the time she had already served and requested a discount on that basis. In response the judge seemed to indicate that he at first understood Hollins to be arguing for continued supervised release or to be put at liberty. Hollins's counsel clarified that she was not asking for release. When counsel started to say "What I'm asking for is," the district judge interjected "Is a reduction in the period of … ." Hollins's counsel then explained, "Because she's already been in custody on this exact same conduct and will receive no credit for time served."

Counsel for the government then weighed in, urging that the court's sentence should be considered a punishment for violating the conditions of her supervised release rather than for the underlying conduct and stating that the government did not believe there had been any additional sanctions for the felony theft committed while she was on supervised release. Counsel for Hollins added, "I'm sure the Court also knows that the Guidelines are advisory, specifically for the purpose of–". The district judge interjected, "I am thoroughly aware of that."

The record as a whole satisfies us that the judge considered Hollins's principal arguments in mitigation. The tran-

script indicates that he understood her to be asking for a sentence reduction and that he was aware of his discretion to fashion an appropriate sentence. He also indicated that he understood her to be making an argument related to her sobriety and rejected it based on his concern (based on her track record) about recidivism. The judge did not, in short, pass over Hollins's arguments in mitigation in silence. *Cf. Villegas-Miranda*, 579 F.3d at 802.

We are also persuaded that the judge did not impermissibly lengthen Hollins's term of incarceration to promote rehabilitation—a step that *Tapia v. United States*, 564 U.S. 319 (2011), forecloses. His comments about the medical benefits of incarceration and the programs available through the Bureau of Prisons at most touched on matters of fact (the programs) and the adequacy of the care she would receive while in prison. Moreover, Hollins does not argue that the district court actually relied on the rehabilitative programming to justify her sentence, nor has she argued that this would constitute an independent ground for reversal. We are satisfied that the district court did nothing inconsistent with *Tapia*, and so we are not troubled by its reference to these programs.

B

Hollins also argues that the district court effectively delegated its authority and judgment by relying uncritically on the probation officer's sentencing recommendation. Probation officers, we have said, are "professionals who play critical roles in the federal justice system." *United States v. Crisp*, 820 F.3d 910, 913 (7th Cir. 2016). Their duty, as relevant here, is to conduct presentence investigations, compile information, and make a recommendation to the judge. FED. R. CRIM. P. 32; *United States v. Peterson*, 711 F.3d 770, 775–76 (7th

Cir. 2013). "But of course probation officers do not have the power to revoke supervised release and return an offender to prison. Every action the probation officer takes is subject to review by the district court responsible for the supervisee." *Crisp*, 820 F.3d at 913. "[P]robation officers are employees of the federal judiciary … yet they are not allowed to decide the sentences of convicted defendants." *United States v. Thompson*, 777 F.3d 368, 382 (7th Cir. 2015).

At the hearing the district judge told Hollins that he was "absolutely required to rely on the advice of" and "[did] have to rely on the recommendations of" the probation services. If this were all the record showed, there might be a serious problem. But it is not. After prompting by the government, the judge clarified his comments: "I do not blindly follow what Probation says. I don't mean that at all. I rely on them to a great extent because of their experience … but I don't blindly follow them."

Naturally, it would not be enough for a judge merely to *say* that he was not blindly following Probation and nevertheless to do so. Hollins says that this is what happened, or at least that it is impossible to rule it out. At oral argument, her counsel contended that there is no way of knowing *what* the district court relied upon in fashioning a 28-month sentence for her. But that goes too far. First, the judge knew Hollins well, having adjusted her supervised release conditions on several occasions and having seen how hard compliance was for her. Second, he relied on the reasoning of the probation office in its presentencing report and recommendation—a proper, indeed common, step. See, *e.g.*, *United States v. Speed*, 811 F.3d 854, 856 (7th Cir. 2016) (noting the district judge had adopted

the conditions and reasoning contained in probation's presentence reports). The judge explained *why* he was comfortable relying on the reasoning and recommendation from the probation office. As he told Hollins, "They work with you. They deal with you. They see you personally. All these things, I don't do." Finally, as we already have noted, the judge considered Hollins's arguments in mitigation at the hearing— points that did not appear in the probation office's recommendations. We are therefore satisfied that the district court did not abdicate its authority or rely unduly on the probation office.

## C

Hollins's last point is a familiar one: that the district judge did not adequately consider the statutory sentencing factors. A district court may revoke supervised release after considering several of the factors set forth in 18 U.S.C. § 3553(a); namely, those at sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). See 18 U.S.C. § 3583(e); see also *Boultinghouse*, 784 F.3d at 1177–78. But, just as in the original sentencing proceeding, the court does not need to discuss each factor in a checklist fashion. *United States v. Washington*, 739 F.3d 1080, 1081 (7th Cir. 2014). When a sentence is within the range recommended by Chapter 7 of the guidelines, the court need only provide a concise explanation on the record that reflects that it considered the proper factors. *Boultinghouse*, 784 F.3d at 1178.

Here the court referred to the presentence report's calculation of 21 to 27 months, which was based on Hollins's criminal history of VI and a Grade B violation. This is consistent with the range set forth at U.S.S.G. § 7B1.4, which suggests 21 to 27 months for a person with those characteristics. The court also

noted the addition of the 31 days of unserved home confinement and imposed a total sentence of 28 months.

While 28 months is a month higher than the top of the range recommended in § 7B1.4, that is not the end of the analysis. Section 7B1.3(d) specifies that "[a]ny … home detention previously imposed in connection with the sentence for which revocation is ordered that remains … unserved at the time of revocation shall be ordered to be … served in addition to the … § 7B1.4 [imprisonment term], and … may be converted to an equivalent period of imprisonment." Further, § 7B1.3(f) specifies that any imprisonment term imposed upon revocation of supervised release "shall be ordered to be served consecutively to any sentence the defendant is serving, whether or not [that] sentence … resulted from the conduct that is the basis of the revocation … ." Taking those additional recommendations into account, we see that the proposed range for imprisonment in Hollins's case went up to 28 months (27 months plus 31 days)—just what she got. There is no anticipated discount for the time she served in IDOC custody for her retail theft conviction.

At the revocation hearing the district court relied on Hollins's criminal history, her repeated violations of the terms of her supervised release, and the failure of supervised release and graduated sanctions to deter Hollins's criminal conduct. These are pertinent under sections 3553(a)(1) ("the history and characteristics of the defendant") and (a)(2)(B) ("the need for the sentence imposed to afford adequate deterrence to criminal conduct"). The court also noted the range recommended by the Chapter 7 statements, which it found relevant to section 3553(a)(4). While much of the rationale appears in the probation officer's report, which the court adopted, this

was permissible. Taken as a whole, we find no procedural error in the resentencing proceeding.

We find that the district court did not commit procedural error in its resentencing of Hollins and therefore AFFIRM its 28-month sentence.