**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3268

_____

UNITED STATES OF AMERICA

v.

VAUGHN JOHNSON, a/k/a Andrew Smith,
a/k/a Glenroy King

Vaughn Johnson,
                                        Appellant

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

On Appeal from the District Court of the Virgin Islands
(D.V.I. No. 1:11-cr-00021-001)
District Judge:  Honorable Wilma A. Lewis

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Argued on May 4, 2017

Before:  GREENAWAY, JR., SHWARTZ, and FUENTES,
*Circuit Judges*.

(Opinion filed: June 30, 2017)

Omodare B. Jupiter    **[Argued]**
Office of Federal Public Defender
1115 Strand Street, Second Floor
Christiansted, VI 00820
           *Counsel for Appellant*

Alphonso G. Andrews, Jr.
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, VI 00820

David W. White    **[Argued]**
Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI 00802
           *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*.

Appellant Vaughn Johnson challenges a judgment revoking his term of supervised release and resentencing him to 18 months in prison (with credit for time served). He contends, among other things, that the District Court of the Virgin Islands lacked jurisdiction over the term of supervised release, because 1) he was subject to a previous revocation order, entered by a different district court, on an unrelated concurrent supervised release term; and 2) the Virgin Islands Probation Office failed to actually supervise him or attempt to

2

do so.  As we find that the District Court was not deprived of jurisdiction, we will affirm.

## I.

In the early 2010s, Johnson was twice convicted of federal crimes.  The first conviction, in the Middle District of Florida, arose from a charge of lying on a passport application.  The second, in the District of the Virgin Islands, arose from wire fraud charges.  In both instances, Johnson received a custodial sentence followed by three years of supervised release, the conditions of which would be violated if he committed another crime.[1]  Because Johnson was already imprisoned on the first charge when he was indicted, convicted, and sentenced on the second, he effectively served one aggregate prison term in connection with both convictions.

After Johnson was released from prison in January 2014, he settled in the Middle District of Florida, and the Middle District's Probation Office took charge of his supervision.  Aside from a brief status phone call in June 2014 that he initiated, Johnson had no contact with the Virgin Islands Probation Office, which otherwise took no action to supervise or keep tabs on him.

In January 2015, Johnson was again indicted in Florida federal court for lying on a passport application—a charge to

[1] *See* 18 U.S.C. § 3583(d) ("*The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision . . . .*").

3

which he would eventually plead guilty, but which also violated the no-new-crime condition of his supervised release terms. As a result, the Middle District of Florida began taking steps to revoke the Florida term of supervised release by issuing an order of detention. Johnson eventually admitted the Middle District revocation charge and, in April 2016, the district court entered a judgment of revocation sentencing him to time served.

Although the new Florida federal indictment had been handed down in January 2015, the Virgin Islands Probation Office took no action until March 2016, when it was belatedly informed by its Middle District of Florida counterpart of Johnson's new indictment and, by extension, of his violation of the conditions of the Virgin Islands term of supervised release. After inquiring into whether the Middle District of Florida Probation Office would accept a formal transfer of jurisdiction (Florida declined), the Virgin Islands Probation Office notified the Virgin Islands District Court of Johnson's violation. The Court then began the formal process of revoking Johnson's Virgin Islands term of supervised release.

This time, however, Johnson decided to challenge the revocation proceedings. He did so partly on jurisdictional grounds, arguing that the Florida district court's judgment of revocation had eliminated the Virgin Islands term of supervised release, leaving nothing left to supervise or revoke. He claimed also that the Virgin Islands Probation Office's abdication of its supervisory responsibility—as demonstrated by its failure to supervise or attempt to supervise between his release from prison and March 2016—otherwise deprived the District Court of jurisdiction.

4

After conducting a revocation hearing,[2] the District Court overruled Johnson's challenges, denied his oral motion to dismiss, revoked his supervised release, and sentenced him to 18 months in prison (with credit for time served) and 18 additional months of supervised release. Johnson appealed.

## II.[3]

a) Jurisdictional Arguments

1) *Merger of Concurrent Terms of Supervised Release*

Johnson's first argument is that the two concurrent

---

[2] *See* Fed. R. Crim. P. 32.1(b)(2).

[3] We have jurisdiction under 28 U.S.C. § 1291 to determine, among other things, whether the District Court properly exercised its own jurisdiction under 18 U.S.C. §§ 3241 and 3583(e). Johnson has been released from prison, but as the separate term of supervised release contained in the revocation judgment is not "over, and can[] be undone" if he prevails, this appeal is not moot. *Spencer v. Kemna*, 523 U.S. 1, 8 (1998). Our review of questions of law, jurisdictional or otherwise, is plenary. *See United States v. Merlino*, 785 F.3d 79, 82 (3d Cir. 2015) (noting that, in a supervised release appeal, "review of jurisdictional issues is plenary"); *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008); *see also United States v. Juarez*, 601 F.3d 885, 888 (9th Cir. 2010) (per curiam) ("We review de novo whether the district court had jurisdiction to revoke a term of supervised release.").

terms of supervised release, from Florida and the Virgin Islands, were effectively terminated by the Middle District of Florida's single revocation judgment. He relies in part on 18 U.S.C. § 3624(e), the subsection of the "Release of a prisoner" statute pertaining to "Supervision After Release." Johnson points out that from a logical standpoint, a *single* Probation Office operating out of a *single* judicial district will have the actual duty of supervision, as a person will not generally reside in two separate districts at the same time. Johnson therefore argues that "where multiple terms of supervised release run concurrently, revocation of one such term necessarily terminates the concurrent terms . . . because Congress effectively determined that an offender should serve only one term of post-release supervision."[4] In effect, Johnson proposes a *de facto* merger of concurrent supervised release terms, combining the practical reality of single-district supervision with the legal consequences of committing a violation. A single revocation judgment would, in this model, wipe out all concurrent supervised release terms then pending.

As Johnson seems to concede, however, the two Courts of Appeals that have addressed an analogous argument in their published decisions—the Second and Fifth Circuits, in *United States v. Gammarano* and *United States v. Alvarado*—have rejected it.[5] Johnson did not explain either

---

[4] Appellant's Br. at 11.

[5] *See United States v. Gammarano*, 321 F.3d 311, 314 (2d Cir. 2003) ("Nothing in the text of § 3624(e), or any other statute, indicates that the revocation of one term of supervised release necessarily terminates another term of supervision simply because it runs concurrently with the term being

in his brief or at oral argument why he thinks these cases were wrongly decided. Our own case law, moreover, rejects his argument by implication. In *United States v. Dees*, we joined six other circuits in permitting consecutive prison terms to be imposed when concurrent terms of supervised release are revoked, even if the revocations are all based on the same underlying violation conduct[6]—an outcome that depends on the viability of multiple, independent terms of supervised release.

Nevertheless, we begin with the language of the statute upon which Johnson bases his argument, § 3624(e), which addresses the mechanics of supervised release terms—setting out when they begin, when they are tolled, and how supervision is transferred between the Bureau of Prisons (a part of the Department of Justice) and the Probation Office (a part of the federal court system). Section 3624(e) says a term

revoked . . . . Accordingly, we hold that revocation of a term of supervised release for one conviction does not terminate supervised release imposed as a result of a separate conviction."); *United States v. Alvarado*, 201 F.3d 379, 381–82 (5th Cir. 2000) (holding that the revocation of one term of supervised release did not "automatically terminate" another); *see also United States v. Mittelstadt*, 88 F. App'x 128, 129–30 (7th Cir. 2004) (nonprecedential per curiam order) ("We see no reason why the district court could not have revoked one term of supervised release but not the other . . . ."); *McGaughey v. United States*, 596 F.2d 796, 797–98 (8th Cir. 1979) (per curiam) (reaching a similar outcome in the context of 28 U.S.C. § 2255 and via summary affirmance).

[6] 467 F.3d 847, 851–52 (3d Cir. 2006).

of supervised release "commences on the day the person is released from imprisonment," which is when a prisoner is "released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." The term of supervised release then "runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release."

In our view, nothing in the language of § 3624(e) supports Johnson's claim that Congress "effectively determined" that a prisoner would be subject to only a single *de facto*, amalgam term of supervised release. To the contrary, the statute specifically acknowledges that a supervised release term is to be concurrent with other federal and state probationary or parole periods, including another federal term of supervised release; or, as we said in *Dees*, "[§] 3624(e) mandates that multiple terms of supervised release run concurrently."[7] Section 3624(e) does use the singular throughout—"the term," not "the terms," overseen by "a" probation officer—but we think this is because it is written to address individual terms of supervised release, in line with other parts of the statutory framework.[8] We do not read that drafting choice, or the statute more broadly, to bolster Johnson's merger argument.

---

[7] *Id.* at 851.

[8] *See, e.g.*, 18 U.S.C. § 3583(e) (setting forth how a court may terminate, extend, or revoke "a term" of supervised release).

We gain further support for our decision by reference to the relevant federal probation statute. In the federal system, probation differs from supervised release in that it is imposed as an alternative to prison rather than in addition to prison.[9] Otherwise, federal probation is governed by the same basic mechanics as supervised release and is subject to the same logistical realities regarding multiple terms of supervision that Johnson has identified.[10] The analogous probation statute is § 3564, which is entitled "Running of a term of probation." Its subsection (b) specifically acknowledges "[m]ultiple terms of probation," which "whether imposed at the same time or at different times" are to "run concurrently with each other." Thus, far from demonstrating a congressional intent to bring about a merger of probation terms, § 3564(b) indicates the opposite. It is therefore unlikely that probation and supervised release were intended to function differently from each other on such a basic level.

More broadly, in cases such as this one where multiple terms of supervised release arise out of judgments entered in different judicial districts, Johnson's merger argument would

---

[9] *See United States v. Weikert*, 504 F.3d 1, 7 n.4 (1st Cir. 2007); *United States v. Copley*, 978 F.2d 829, 831 n.* (4th Cir. 1992) ("Supervised release and probation differ only in that the former follows a prison term and the latter is in lieu of a prison term.").

[10] *See United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002) (discussing similarities between probation and supervised release); *see also* Fed. R. Crim. P. 32.1 ("Revoking or Modifying Probation or Supervised Release.").

violate the general modern rule that a court lacks jurisdiction to modify a criminal judgment from another district.[11]  And as § 3583(a) establishes, supervised release is as much a "part of the sentence" as a term of imprisonment or a fine.  We see no reason, and Johnson does not advance any, to treat the power to modify or revoke a term of supervised release any differently than we would the power to modify any other aspects of a criminal judgment.  This is especially so in light of 1) the inclusion in the statutory framework of an explicit mechanism for transferring supervised release jurisdiction among judicial districts, and which allows the transferee district to step into the shoes of the original sentencing court[12]; and 2) the plentiful jurisdictional language in Fed. R. Crim. P. 32.1, such as its distinction between "Appearance in the District With Jurisdiction" and the same in "a District Lacking Jurisdiction."[13]  Were Johnson correct, this clear jurisdictional language would be rendered superfluous when, as here, a person was subject to more than one term of

---

[11] For instance, federal law generally directs that filings attacking the validity or length of a conviction or sentence be made in the sentencing court.  *See, e.g.*, *In re Nwanze*, 242 F.3d 521, 525 (3d Cir. 2001) ("[O]rdinarily a petitioner should present [an attack on a conviction] to the sentencing court rather than the court in the district in which he is confined.").

[12] *See* 18 U.S.C. § 3605; *cf. United States v. Adams*, 723 F.3d 687, 689 (6th Cir. 2013) (holding that "§ 3605 authorizes a transferee court to revoke a term of a defendant's supervised release for violations committed prior to the transfer of jurisdiction").

[13] Fed. R. Crim. P. 32.1(a)(4), (5).

supervised release from more than one judicial district.

For the above reasons, we join the Second and Fifth Circuits in rejecting the model of merged terms of supervised release.[14] As a result, we conclude that the Virgin Islands term of supervised release was *not* constructively discharged by the Middle District of Florida's separate judgment of revocation. In fact, even if the Middle District of Florida had intended to act on Johnson's Virgin Islands term of supervised release—and there is no indication that it did—the court would have been without jurisdiction to do so, absent a formal § 3605 transfer of jurisdiction from the Virgin Islands.

### 2) *Failure to Actually Supervise*

Johnson's second jurisdictional argument also relies on § 3624(e). Pointing to the mandatory language of the statute—a Probation Officer "*shall* . . . supervise the person released"—he alleges that the Virgin Islands District Court lacked jurisdiction because its Probation Office "failed to supervise or even attempt to supervise [him]," thereby

---

[14] We are otherwise unconvinced by Johnson's rule-of-lenity and reliance arguments. The statutes are not ambiguous, *see United States v. Salahuddin*, 765 F.3d 329, 340 (3d Cir. 2014), and Johnson does not explain how his "assumption" that his supervision was transferred to Florida has any legal significance. To the extent that Johnson intends to argue that his incorrect assumption led him to take a legal stance in the Florida revocation that would have prejudiced him on *res judicata* grounds, we do not assign such an argument any jurisdictional significance.

11

abdicating its statutory responsibility to do so.[15]

At the outset, we do not agree with Johnson that § 3624(e) conditions jurisdiction to revoke on actual supervision by a particular Probation Office. Otherwise, a court would be deprived of jurisdiction if a person committed a violation after being released from prison but before reporting, or while AWOL, or while traveling within another judicial district.

Johnson suggests that the relevant distinction is between action and inaction, but we are not so sure; § 3624(e) does not otherwise speak in clear jurisdictional language[16] and says nothing about "attempts" to supervise. And while Probation Officers play an essential role in supervision, they are not the ultimate decision-makers in the context of supervised release. Rather, the judgment is overseen by the district court itself.[17] We will not cut short the district court's jurisdiction upon the Probation Office's failure to fulfill its statutory responsibilities.

Further, based on the logistical hurdles to actual multi-district supervision previously mentioned, the Virgin Islands Probation Office would have been functionally unable to

---

[15] Appellant's Br. at 15.

[16] *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 (3d Cir. 2016) (explaining the presumption against interpreting statutory language as jurisdictional).

[17] *Cf. United States v. Hollins*, 847 F.3d 535, 541 (7th Cir. 2017) (addressing the authority of Probation Officers to render advice for the ultimate review of the district court).

supervise Johnson so long as he remained in Florida. As the District Court observed during the revocation hearing, even if the Virgin Islands Probation Office had "attempted" to supervise Johnson, or had engaged in a semiformal "courtesy supervision"[18] arrangement with the Middle District of

[18] Johnson argues, in part, that "courtesy supervision"—an informal arrangement between Probation Offices that does not transfer jurisdiction, but instead uses the supervising office as the "eyes and ears" of another—is not authorized by law. *See* Appellant's Br. at 12. According to the Guide to Judiciary Policy, however, courtesy supervision finds its statutory basis in 18 U.S.C. § 3603(4), which instructs probation officers to "be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district." *See* 8E Guide to Judiciary Policy § 375.10 (Apr. 17, 2014) (setting forth statutory bases for short-term courtesy supervision and longer-term "transfer of supervision" without transfer of jurisdiction). While we need not determine whether courtesy supervision for longer durations comports with the "brief period[s] of time" set forth in the Guide, *see id.*, we do note that courtesy supervision exposes another flaw in Johnson's jurisdictional argument. If Johnson were instead serving a Florida *state* term of supervised release or probation, a formal transfer of jurisdiction to Florida would have been impossible, as § 3605 authorizes transfer between federal district courts only. As a result, if Johnson were correct about the jurisdictional nature of actual or attempted supervision, a federal term of probation or supervised release could become a nullity whenever a state probationary term was actually being served.

Florida, the result would have been the same: actual supervision by the Middle District of Florida.[19]

Accordingly, we reject this jurisdictional challenge.[20]

b) Violation of Due Process

In his final (and only non-jurisdictional) argument, Johnson contends that the District Court erred by relying on two documents the Court had independently obtained from the Middle District of Florida Probation Office. In so doing, Johnson asserts, the District Court denied his Due Process right to a neutral and detached arbiter by assuming the role of an advocate for the government.

---

[19] On that point, we note that the Judicial Conference has long encouraged district courts to transfer undischarged supervised release terms to the actual district of supervision, voting in 1988 to "encourage courts mutually to consent to such transfers as provided by 18 U.S.C. [§] 3605." Report of the Proceedings of the Judicial Conference of the United States 13 (Mar. 15, 1988). The Guide to Judiciary Policy also continues to recognize the advantages of "simultaneous transfer of jurisdiction in all instances when an offender is being supervised in another district." 8E Guide to Judiciary Policy § 375(c).

[20] Contrary to what Johnson suggests, our holding does not read out of the statute the mandatory responsibilities of the Probation Office. Rather, it simply recognizes the distinction between "mandatory" and "jurisdictional." *See, e.g.*, *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

This claim fails under any standard of review.[21] Although the documents in question are not part of the record on appeal, the hearing transcript indicates that they consisted of two letters acquired from the Middle District of Florida Probation Office specifying the date of Johnson's release from prison and explaining why he was briefly released in Kentucky, topics that had earlier been addressed by the Probation Officer's testimony. To the extent that the Court's reliance on them violated the "minimal" due process protections that apply in revocation proceedings,[22] Johnson fails to show, or even argue, that this violation led to any prejudice. We do not perceive any on independent review; the documents were, at most, relevant to the start date of Johnson's term of supervised release and/or the fact of his actual supervision in Florida, neither of which appeared to be seriously in dispute (and neither of which is being litigated in this appeal).

## III.

As the District Court had jurisdiction to revoke Johnson's term of supervised release, and did not violate his Due Process rights in the course of doing so, we will affirm its judgment.

---

[21] Johnson does not appear to have raised this as a Due Process argument below, but the government nevertheless urges plenary review, *see* Gov't Br. at 16.

[22] *Morrissey v. Brewer*, 408 U.S. 471, 485, 489 (1972); *see also United States v. Maloney*, 513 F.3d 350, 356 (3d Cir. 2008) (explaining that Fed. R. Crim. P. 32.1 incorporates Due Process protections).