NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2018
Decided June 19, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2405

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:16 CR 496-1 |
| MICHAEL M. MARTINEZ, *Defendant-Appellant*. | Edmond E. Chang, *Judge*. |

**O R D E R**

On May 5, 2016, Michael Martinez approached a car in Chicago's Little Village neighborhood and pointed a loaded .357 revolver at two people he believed to be rival gang members. They instead were Chicago police detectives. Martinez's subsequent arrest led to his pleading guilty to being a felon in possession of a firearm, for which he received a sentence of 117 months' imprisonment, three months below the advisory guidelines range. Martinez contends that the district court committed procedural errors that affected his sentence and warrant remanding for resentencing. The record shows otherwise, so we affirm.

**I**

Martinez's conduct in May 2016 occurred on an evening when he was under the substantial influence of drugs and alcohol. As the two detectives saw Martinez approaching their unmarked sedan with a drawn gun, they announced themselves as police. Martinez then turned and ran. A brief foot chase ended with the officers catching Martinez, seizing the drawn gun, and finding not only a second fully loaded firearm, a .40 caliber semi-automatic revolver, but also a reserve magazine with multiple rounds of ammunition. A grand jury subsequently indicted Martinez for possessing two firearms following a prior felony conviction, in violation of 18 U.S.C. § 922(g). Martinez pleaded guilty, and the case proceeded to sentencing.

Sentencing began with the parties agreeing that Martinez's advisory range under the Sentencing Guidelines mirrored the ten-year statutory maximum sentence Congress established in section 922(g). The government then asked the district court to impose the maximum sentence, emphasizing the gravity of Martinez's offense conduct (pointing a loaded gun at police officers), and his extensive criminal history (five prior felony convictions). One of those five felonies occurred in 1988, and entailed Martinez, in frightening similarity to the conduct that landed him in the district court, firing gunshots into a car he believed contained rival gang members. That time the car contained children, and resulted in Martinez murdering a 13-year-old girl.

For his part at sentencing, Martinez underscored aspects of his upbringing and background that he believed mitigated against a ten-year sentence. He explained that he grew up without parental supervision, joined the Latin Kings at 14, and found himself beholden to the grip of gang life and drug abuse, all of which ultimately resulted in multiple criminal convictions and him spending nearly 30 years of his adult life incarcerated. Martinez drew particular attention to extreme hardship he endured for ten years (between 1999 and 2009) in solitary confinement in Illinois' now-shuttered Tamms supermax facility. Life within Tamms, Martinez elaborated, entailed complete isolation for 23 hours each day in an environment scarred by inmates experiencing severe and recurring mental breakdowns—conditions that prevented rehabilitation. Martinez also sought a reduced sentence by pointing to social science studies finding that the risk of being apprehended, rather than the length of a sentence, is what most serves as a general deterrent to crime.

After considering the totality of this information, the district court sentenced Martinez to 117 months' imprisonment, three months below the advisory guidelines

range. In doing so, the district court, after identifying the sentencing factors delineated in 18 U.S.C. § 3553(a), emphasized that Martinez committed "the most serious form of the felon-in-possession crime" by drawing a gun and pointing it at others (here, police officers), only then to be found in possession of a second loaded gun. So, too, did the district court highlight Martinez's "extremely serious criminal history," including the 1988 murder of the 13-year-old girl. On a more positive note for Martinez, the district court credited him for accepting responsibility for his offense conduct as well as participating in substance abuse programs while detained following his federal arrest.

The district court also expressly addressed Martinez's two mitigation arguments. First, the court recognized the mental impact that solitary confinement at Tamms had on Martinez, making clear that this hardship was being "take[n] into account" in determining the appropriate sentence. The district court determined that the ultimate mitigating value of Martinez's experience at Tamms was "very limited," however, as Martinez found himself in solitary confinement not because of a random decision of the Illinois Department of Corrections, but because he had assaulted two correctional officers. Second, the district court, while acknowledging the academic studies Martinez had identified regarding the relative lesser importance of the length of a sentence compared with the risk of being apprehended, concluded that considerations of general deterrence remain an appropriate factor at sentencing.

The district court then took care to explain why, after "balancing all these factors," a sentence of 117 months' imprisonment was appropriate:

> I'm going to sentence you to something slightly short of [120 months] just to express some amount of optimism and hope that you will rehabilitate, as well as to reflect the fact that you did plead guilty, and you really could have rolled the dice in this case at trial and probably faced a very similar sentence.

The district court also imposed a term of three years' supervised release, ordered forfeiture, and imposed the mandatory $100 special assessment.

Before advising Martinez of his right to appeal and closing the proceeding, the district court stated that it would recommend that the Bureau of Prisons provide Martinez with substance abuse and mental health treatment, including through RDAP, its Residential Drug Abuse Program. The district court told Martinez that "[g]etting into that program is going to be conditioned on how well you perform, you know, in prison" and that the program "can shave as much as like a year off your sentence."

## II

Reviewed *de novo* and measured against the requirements announced in *Gall v. United States*, 552 U.S. 38, 51 (2007), and our accompanying case law, we conclude that the district court committed no procedural error in sentencing Martinez.

The record shows that the district court adequately considered the two primary arguments Martinez advanced in mitigation. The court expressly acknowledged the "mental impact" of the prolonged solitary confinement and other conditions Martinez endured while confined for ten years at Tamms. Indeed, the court went further and observed that "there is certainly room to debate how productive it is to put someone into that segregation situation … because then what happens when the person is released … and has that form of punishment actually put the person on the path of re-offending." But the district court was quick to add that Martinez landed in solitary confinement because he had assaulted Illinois correctional officers. That Martinez disagrees with the weight the district court chose to give his argument does not mean the position was ignored or misunderstood. See *United States v. Haskins*, 511 F.3d 688, 696 (7th Cir. 2007).

Nor did the district court disregard or improperly discount Martinez's argument about the limited value of long sentences to achieve general deterrence. The record shows the opposite. The district court expressly acknowledged the academic studies identified by Martinez and, albeit briefly, explained that those studies do not eliminate the propriety of considering the general deterrent effect achieved by a particular sentence—an observation on all fours with 18 U.S.C. § 3553(a)(2)(B). The law requires no more, as a sentencing court's discussion of a mitigating factor need not be lengthy to be sufficient. *United States v. Davis*, 764 F.3d 690, 694 (7th Cir. 2014). That is especially so

where, as here, the district court imposed a sentence below the advisory guidelines range. See *United States v. Kappes*, 782 F.3d 828, 847 (7th Cir. 2015).

What Martinez has correct on appeal, and the government agrees, is that the district court committed an error in encouraging him to enroll in RDAP as a way of receiving not just substance abuse treatment but also the possibility of a reduced sentence. Inmates like Martinez who are convicted of unlawful possession of a firearm are ineligible for early release through RDAP. See 28 C.F.R. § 550.55(b)(5)(ii).

The district court's erroneous statement does not in and of itself mandate resentencing. The question is whether the district court's inaccurate belief about Martinez's eligibility for early release through RDAP influenced the selection of the ultimate sentence. See *Williams v. United States*, 503 U.S. 193, 203 (1992) (stating that appellate courts should ask "whether the district court would have imposed the same sentence had it not relied upon the invalid factor"); *United States v. Smith*, 562 F.3d 866, 873–74 (7th Cir. 2009) (affirming because defendant could not show that the district court relied on error about early-release prospects in imposing sentence).

Martinez cannot satisfy this standard, for the record plainly shows that the district court's statements about RDAP and the potential for early release came after the announcement of the sentence. In explaining why 117 months was an appropriate sentence, the district judge never once referred to RDAP or its potential effect on the overall time Martinez would serve. The fairest reading of the record is that the district court mentioned RDAP as an after-thought, as a way not of explaining any aspect of the announced sentence, but rather of encouraging Martinez to pursue every rehabilitation opportunity available to him while incarcerated. See, *e.g.*, *United States v. Hollins*, 847 F.3d 535, 540 (7th Cir. 2017) (district court's commenting about adequacy of sobriety programs in prison did not signal reliance on rehabilitative programming when imposing sentence); *United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012) (district court's discussing rehabilitation opportunities within prison was not erroneous).

This conclusion makes all the more sense in light of the fact, which the district court recognized, that decisions about participation in RDAP rest entirely with the Bureau of Prisons, not sentencing courts. See *Tapia v. United States*, 564 U.S. 319, 330–31 (2011); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). The district court did not promise Martinez admission to RDAP or in any way indicate that the intended and appropriate sentence was anything other than 117 months' imprisonment. In short, the

district court did not rely on a misimpression about any potential early release as part of deciding upon a proper sentence for Martinez.

Accordingly, we AFFIRM the judgment of the district court.