In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-4090

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DIANNE KHAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 CR 42—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED SEPTEMBER 12, 2007—DECIDED NOVEMBER 1, 2007

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant-Appellant, Dianne Khan, appeals her conviction under 18 U.S.C. § 1001(a)(1), which punishes knowingly and willfully concealing a material fact from federal officials, in this case the Department of Housing and Urban Development ("HUD"). During her trial, Khan's attorney attempted to elicit a statement from a government agent regarding another government agent's statement during an investigatory interview. The government objected on hearsay grounds and the district court sustained the government's objection, citing Federal Rule of Evidence 403. Khan now appeals the district court's refusal to admit the question. Finding no error, we affirm.

## I.  Background

Sometime in 1999, Dianne Khan became eligible for Section 8 housing assistance by virtue of physical and mental disability. She had previously resided at Forest Tower / Metro Apartments in Milwaukee, Wisconsin (the "Forest Tower address") and she decided to maintain this residence with the assistance of a HUD subsidy. To obtain the subsidy, Khan signed a HUD-approved form lease, which required, among other things, that "The tenant agrees to reside in this unit, and agrees that the unit shall be the tenant's and his or her family's only place of residence." In the coming years, Khan periodically recertified the terms of this initial lease. On January 14, 2003, the form asked "Will any of the above household members live anywhere except in the apartment?" Khan responded that she would "live a couple days at another address when I was looking for work and [needed] to have phone calls for jobs." In addition, Khan submitted at least three required reports—in 1998, 1999, and 2002—to alert HUD that a member of the household was moving out. Khan received her federal assistance until the current case began in September 2004.

This case stems in many ways from Khan's marriage to a man named Aftab Umer in July 2002. On September 1, 2002, Umer and Khan signed a lease together for a different apartment at 2327 West Michigan Avenue in Milwaukee ("West Michigan Avenue address"). Umer was not a citizen of the United States and after their marriage Khan filed a petition for alien relative to enable Umer to naturalize. On the form, Khan listed the West Michigan address as her primary address; her Forest Tower address was listed as a "previous" address. Because Khan had married foreign-born men in the past, her marriage aroused the suspicion of Immigration and Customs Enforcement ("ICE") and an investigation ensued.

Agent Jeffrey Stillings from the ICE spearheaded the investigation. He began with a visit to the West Michigan Avenue address but found no one there. The next day he visited the Forest Tower address unannounced and found Khan at home. During the course of their conversation, Khan stated that she maintained two apartments and was only rarely at her Forest Tower address. The next day, Agent Stillings visited the West Michigan Avenue address and, with Khan and Umer's permission, looked around. Framed photographs of the couple and female clothes indicated that Khan was not unfamiliar with the apartment.

On September 28, 2004, Agent Stillings formally interviewed Khan in the presence of Umer's attorney. Khan gave a sworn and written statement, freely admitting that she lived at the West Michigan Avenue address. She stated that she had only stayed at the Forest Tower apartment four or five times over the last two years. Also present in the interview was Agent James Siwek who, unbeknownst to Khan, was from HUD's Office of the Inspector General. Agent Stillings had grown to suspect fraud against HUD based on his prior questioning of Khan, so he invited Agent Siwek to join the investigation. To that end, Agent Siwek attended the interview, but kept mum regarding his motive for attending. When Agent Siwek revealed his identity to Khan after she signed the written statement, Khan ended the interview.

The central issue at trial was what to make of the abrupt end to the interview after Agent Siwek revealed that he was from HUD. The government pointed to this evidence as proof that Khan knew the illegality of maintaining two residences. Khan, on the other hand, maintained that Agent Stillings had threatened her with prosecution for a HUD violation if she did not roll over on the marriage fraud charges and justified the abrupt termination on these grounds.

At trial, Agent Siwek was the first witness. He testified on direct that after he revealed his identity, Khan terminated the interview. On cross, Khan's attorney asked three questions in order to undo the inference of knowledge. First, Khan's attorney asked whether Khan terminated the interview because she had been given a choice between a marriage fraud prosecution or a HUD violation. Agent Siwek said he did not know why Khan terminated the interview. Second, Khan's attorney asked whether Agent Siwek had "hear[d] anything that would suggest that [Khan] was being threatened with the HUD violation prosecution because she wouldn't admit to marriage fraud." Testimony of Agent Siwek, vol. 1, at 28 (June 19, 2006). Agent Siwek said he had not. Finally, Khan's attorney started to ask whether Agent Stillings had said during the interview that if Khan admitted to marriage fraud, the government would not pursue a HUD violation. As soon as it became clear that Khan's attorney was questioning Agent Siwek about Agent Stillings' statement, the government objected on hearsay grounds. Khan's attorney argued that the statement was meant to show Khan's state of mind and was not offered for the truth of the matter asserted. However, the district court sustained the objection. The court reasoned that the question moved the questioning towards a "slippery slope." Testimony of Agent Siwek, vol. 1, at 30. The district court also recognized that Umer's attorney would later testify as to the same matter and refused to admit the question, stating that "basically, my ruling is a 403 decision."

Later in the trial, Agent Stillings testified and verified Agent Siwek's version of events. Agent Stillings said that he had mentioned something about the marriage-fraud investigation after revealing his identity. On cross, Khan's attorney asked whether he had threatened Khan with a HUD prosecution if she did not admit to marriage fraud.

Agent Stillings said that he did not recall using a plea bargain tactic with Khan and that he did not have the power to use such a tactic anyway. Testimony of Agent Stillings, at 41 (June 19, 2006). On June 20, 2006, the jury returned a guilty verdict. On October 6, 2006, the district court sentenced Khan to a five-year term of probation and restitution in the amount of $13,912. She now appeals.

## II. Discussion

On appeal, Khan challenges the district court's decision to halt her attorney's questioning of Agent Siwek regarding Agent Stillings' alleged statement during the interview, claiming that the question was admissible either as non-hearsay or under the rule of completeness. Khan further argues that the question's exclusion affected her rights under the Confrontation Clause. It is unnecessary to decide whether the question was otherwise admissible because, even assuming that it was, the district court did not abuse its discretion in excluding it under Federal Rule of Evidence 403. In addition, the district court's limitation on Khan's questioning of Agent Siwek did not affect her rights under the Confrontation Clause.

First, the district court did not abuse its discretion in excluding Khan's third question. Rule 403 codifies the district court's broad discretion to control the admission of evidence. In defining this discretion, Rule 403 instructs the court to balance the probative value of the evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. This Court reviews a district court's balancing under Rule 403 for an abuse of discretion, which occurs when "no reasonable person could take the view adopted by the trial court."

*United States v. Hughes*, 970 F.2d 227, 232 (7th Cir. 1992) (citing *United States v. Tipton*, 964 F.2d 650, 654 (7th Cir. 1992)).

In the case at bar, regardless whether the evidence was admissible as non-hearsay or under the rule of completeness, the district court did not abuse its discretion in excluding it. In the first place, as the district court reasoned, the continued questioning on marriage fraud was likely to confuse the issues. Khan's questioning would have focused the jury's attention on the suspected marriage fraud, which was not an issue at trial. In addition, the blocked question was cumulative and thus did not add anything to the line of questioning. Agent Siwek had just testified that he had not heard anything about a pending HUD prosecution that would follow if Khan failed to cooperate. The court could reasonably have concluded that the answer to the second question covered sufficiently similar ground as the answer to the third. As a result, the district court did not abuse its discretion in sustaining the government's objection.

Second, Khan argues that the refusal to admit the question violated her rights under the Confrontation Clause, as an unreasonable limitation on cross-examination. As a general matter, this Court reviews a district court's limits on the extent of cross-examination for an abuse of discretion. *United States v. Smith*, 454 F.3d 707, 714 (7th Cir. 2006). But where the limits affect a criminal defendant's right to confront the witnesses who testify against him, this Court reviews the limitation de novo. *Id.* The Confrontation Clause reflects the belief that adversarial proceedings are essential to the truth-seeking function of the criminal trial. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1989). Thus, a trial court's limits on a defendant's ability to cross-examine the government's witnesses can offend the Confrontation Clause by insulating an inculpatory version of events that would

otherwise not withstand a defendant's efforts to "show that a witness is biased, or that the testimony is exaggerated or unbelievable." *Id.* at 51-52; *see also Smith*, 454 F.3d at 714. However, not all limitations foul up the adversarial process. This Court first examines whether the limit foreclosed an opportunity to expose biased or false testimony, thereby affecting the "core functions" of the Confrontation Clause. If the "core functions" of the Confrontation Clause remain intact, this Court ensures merely that the district court's exercise of its "wide discretion" in limiting cross-examination was not abusive. *Id.*

In this case, the district court did not limit cross-examination so as to affect the "core functions" of the Confrontation Clause. Khan had the opportunity to question Agent Siwek regarding the September 2004 interview. The line of questioning leading up to the challenged phrase captured the question that Khan sought to ask. Thus, the limits imposed by the district court did not foreclose an opportunity to develop an exculpatory fact; they simply did not let Khan's attorney pursue a redundant line of questioning. *Smith*, 454 F.3d at 714 ("This limit on cross-examination did not deny Smith the opportunity to establish that Carter harbored a motive to lie; rather it simply limited his ability to add extra detail to that motive."). Because the exclusion of this question did not impact the accuracy of Khan's trial, it did not affect her rights under the Confrontation Clause. In addition, because the excluded question was cumulative of questions already asked and answered, the district court did not abuse its discretion.

### III. Conclusion

For the foregoing reasons, we AFFIRM both the district court's decision to exclude the question posed by Khan's attorney and, in turn, Kahn's conviction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*