In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 18-1327

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KHALID HAMDAN,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 252 — **Manish S. Shah**, *Judge.*

---

ARGUED SEPTEMBER 25, 2018 — DECIDED DECEMBER 11, 2018

---

Before KANNE, ROVNER, and BARRETT, *Circuit Judges.*

KANNE, *Circuit Judge.* Khalid Hamdan appeals his 2014 conviction on three counts related to his activities involving XLR-11, a Schedule I synthetic cannabinoid used to make the street drug "spice." On appeal, Hamdan argues the district court abused its discretion by granting the government's motion to quash Hamdan's subpoenas of two Wisconsin state troopers. The troopers previously arrested and questioned Hamdan after a 2012 traffic stop where Hamdan possessed a

different synthetic cannabinoid. According to Hamdan, this evidence would have supported his defense that he honestly believed synthetic cannabinoids were legal substances and he therefore lacked the requisite *mens rea* to commit the alleged crimes. Hamdan similarly argues that the district court abused its discretion in failing to grant his motion for a new trial because the district court's evidentiary rulings jeopardized his right to present his theory of defense. Because the district court did not abuse its discretion, we affirm.

## I. BACKGROUND

Khalid Hamdan was arrested after an October 30, 2014, traffic stop revealed he was driving on a suspended license. In the vehicle with Hamdan at the time was a man named Fadel Yahia and a shoebox on the backseat containing more than $67,000 in cash. Officers discovered the money after Hamdan consented to their search of his car. Although Hamdan's explanation of the money's origin and purpose would change over time, he generally claimed it constituted proceeds from past sales of dollar store businesses.

Police additionally found a business card for a Public Storage business inscribed with unit and access code information. After Hamdan denied knowledge of the storage unit, police obtained a search warrant. Despite Hamdan's denial, one of the keys he was carrying during the arrest opened the lock at the storage unit identified on the Public Storage business card.

Fadel Yahia, on the other hand, cooperated with law enforcement. He told them that he was employed by Hamdan (who paid Yahia in cash) and alerted them to the existence of a second, "U-Stor It" storage unit. The second unit was rented

in Yahia's name, but Yahia insisted Hamdan controlled it. Another of Hamdan's keys opened the unit's lock. With Yahia's consent, police searched the second storage unit and discovered boxes inside emblazoned with Hamdan's name and address.

When examining both storage units, the officers discovered a total of approximately 20,000 packages of spice. Officers also found the necessary tools and ingredients to make spice: a blue tarp, a digital scale, bottles of acetone, bottles of flavoring, boxes containing a green leafy substance, and a plastic bag filled with a white powdery substance containing the synthetic cannabinoid XLR-11. Officers also recovered handwritten ledgers detailing sales and inventory.

On April 12, 2016, a grand jury indicted Hamdan in two counts of possession of a controlled substance with intent to distribute and one count of conspiracy to manufacture a controlled substance in violation of 21 U.S.C. §§ 841 & 846, respectively. The indictment charged Hamdan for his activities ranging from April 2014 until his arrest in October 2014.

While mustering his defense, Hamdan indicated he would argue that he did not know or believe that his spice-related activities were illegal. Hamdan planned to introduce, among other things, evidence that he was previously arrested—but not prosecuted or convicted—for activities related to spice in Illinois in 2011 and in Wisconsin in 2012. Accordingly, Hamdan sought to subpoena two Wisconsin state troopers who arrested and interviewed him, in part, on synthetic cannabinoid charges following a June 2, 2012, traffic stop. In the 2012 case, Hamdan ultimately pled guilty to misdemeanor possession of THC and the prosecution dropped a controlled

substance analogue charge for Hamdan's possession of another synthetic cannabinoid. Hamdan contended that evidence of his non-prosecution for other synthetic cannabinoids supported his claim that he sincerely believed his conduct in 2014 was legal. Additionally, Hamdan sought to argue that XLR-11 was not a Schedule I controlled substance prior to May 16, 2013.

The government opposed Hamdan's proposed evidence and filed motions *in limine* urging the district court to exclude evidence that spice was previously "legal." The government also moved the court to exclude evidence showing that in the past other jurisdictions declined to prosecute Hamdan for offenses related to different synthetic cannabinoids. Similarly, the government filed a motion to quash Hamdan's subpoenas of the Wisconsin state troopers, arguing that Hamdan's 2012 interactions with the Wisconsin officers were irrelevant to Hamdan's arrest on October 30, 2014 and that their testimony would be prejudicial.

On June 20, 2017, the district court excluded evidence of Hamdan's previous non-prosecution and spice's former legal status. The court reasoned,

> [d]ecisions not to prosecute defendant for possession of other synthetic cannabinoids years before the conduct alleged in the indictment do not tend to show that defendant believed the substance in this case was not controlled. A decision not to prosecute is not a statement of legality and it has no bearing on XLR 11's status in defendant's mind.

(R. 72 at 2).

The district court also remarked that although XLR-11 was not listed as a Schedule I controlled substance prior to May

2013, it had been a controlled substance analogue since 2011. As a result, the court explained, "it would not be correct to describe XLR 11 as 'legal' before May 2013, and therefore [Hamdan] is prohibited from making such an argument." *Id*. Despite partially granting the government's motions, the court noted that Hamdan could still present evidence demonstrating his personal belief that XLR-11 was not a controlled substance and suggested it would revisit the admissibility of specific evidence if Hamdan established the connection of the evidence to his mental state.

Similarly, the district court granted the government's motion to quash the subpoenas. Hamdan's attorney stated that, in light of the court's ruling, the troopers' testimony would not be used to show that Hamdan was not previously prosecuted for possession of synthetic cannabinoids. Instead, Hamdan's attorney told the court the troopers' testimony would confirm Hamdan did not believe synthetic cannabinoids were illegal. Hamdan's attorney indicated that the Wisconsin troopers were unfamiliar with the white powdery substance they found in Hamdan's car in 2012 and that they did not know whether it was an illegal substance or not. According to Hamdan's attorney, the fact that even law enforcement officers were unsure about the legality of a synthetic cannabinoid substance supported Hamdan's argument that he could not have possibly known that synthetic cannabinoids were illegal. The district court found that the Wisconsin officers' testimony regarding Hamdan's 2012 arrest for a different synthetic cannabinoid was irrelevant to his mental state in 2014 concerning XLR-11. Further, the court noted that even if the testimony was weakly probative, its value was substantially outweighed by the likelihood of confusing the jury.

The case continued to trial, where the government presented evidence indicating that Hamdan knew his spice business was illegal. Through testimony and exhibits, the government submitted that Hamdan ran his spice business out of storage units in low-traffic areas, that the units were rented in others' names, that Hamdan actually controlled the units, and that he employed a lookout while he manufactured spice. Two of Hamdan's associates testified against him. Yahia testified that Hamdan paid him in cash to perform a variety of tasks including packaging spice, renting storage units, and acting as a lookout. The other associate stated that Hamdan hired him to transport chemicals from Florida and also paid him in cash. Officers testified that Hamdan provided inconsistent and false explanations for the cash found in his car. Expert witnesses provided testimony concluding that Hamdan's operations had the hallmarks of illegal drug trade and that his fingerprints were found on the packages of the finished product.

Hamdan's attorney made arguments that the government failed to prove Hamdan knew his activities were illegal and further that Hamdan did not believe his activities were illegal. He argued that spice was previously "legal," sold openly at gas stations, and that it eventually became illegal. Hamdan's attorney also argued that spice could be made from a variety of ingredients and emphasized that without laboratory analysis, a person possessing spice may not know its precise contents.

On January 16, 2018, a jury convicted Hamdan on all three counts. Hamdan moved for a new trial under Fed. R. Crim. P. 33 on the basis that the district court's pre-trial evidentiary rulings prevented him from presenting evidence that he did

not know his actions relating to the manufacture and distribution of spice were illegal. This, Hamdan argued, prevented him from presenting his theory of defense. Hamdan further argued that the evidence of his prior arrests would have provided an alternate explanation for why his spice operations were conducted in the obscurity of the storage units: Hamdan was simply avoiding more police harassment of his legitimate business activities. The district court deemed Hamdan's new justification for the evidence as forfeited and denied his motion for a new trial. The district court ultimately sentenced Hamdan to 120 months' imprisonment and three years of supervised release, and ordered the forfeiture of $67,900.

## II. ANALYSIS

On appeal, Hamdan argues the district court abused its discretion in two ways. First, the district court abused its discretion by quashing Hamdan's subpoenas of the Wisconsin troopers involved in his 2012 arrest. According to Hamdan, this error deprived him of his right to present his theory of defense, and forced him to choose between his Fifth Amendment right not to testify against himself and proffering his theory. Second, the district court abused its discretion by not granting Hamdan's Rule 33 motion for a new trial, where he could have subpoenaed witnesses and offered testimony relevant to his beliefs about synthetic cannabinoids' legality. Integral to both claims is the Controlled Substances Act's knowledge requirement. Hamdan suggests the Wisconsin troopers' testimony would have helped him negate the statute's knowledge element by showing he did not believe synthetic cannabinoids were illegal.

*A. The Controlled Substances Act's Knowledge Requirement*

Hamdan was convicted of both possession of a controlled substance with intent to distribute and conspiracy to manufacture a controlled substance under the Controlled Substances Act, 21 U.S.C. §§ 841 & 846. Section 841 provides, "it shall be unlawful for any person knowingly or intentionally…to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). Section 846 criminalizes conspiracy and attempts to commit the crimes identified in § 841. "[Section] 841(a)(1) requires the Government to establish that the defendant knew he was dealing with 'a controlled substance.'" *McFadden v. United States*, 135 S. Ct. 2298, 2302 (2015).

The Supreme Court explained that the knowledge element of the Controlled Substances Act could be proven in two ways. First, the knowledge requirement "may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *Id*. at 2304. Second, the knowledge requirement may also be met "by showing that the defendant knew the identity of the substance he possessed." *Id*.

The first of the two methods is relevant to Hamdan's defense—he claims he did not know synthetic cannabinoids were illicit. The court gave an example of how one might not know the identity of the substance, but still might know that it was illegal:

> Take, for example, a defendant whose role in a larger drug organization is to distribute a white powder to customers. The defendant may know that the white powder is listed on the schedules even if he does not

> know precisely what substance it is. And if so, he would be guilty of knowingly distributing "a controlled substance."

*Id*. *See also United States v. Mire*, 725 F.3d 665, 679 (7th Cir. 2013) ("It does not matter whether [the defendant] knew that khat contained cathinone or cathine; all that matters is [the defendant] knew that khat contained an illegal substance. This distinction is key because having to prove a defendant knew the particular controlled substance at issue would be a much more difficult undertaking.").

To prove Hamdan's knowledge that he possessed a controlled substance, the government need not provide direct evidence, but can offer circumstantial evidence of Hamdan's knowledge. *McFadden*, 135 S. Ct. at 2308 n.3. "As with prosecutions involving substances actually listed on the drug schedules, the Government may offer circumstantial evidence of that knowledge." *Id*. *See also Mire*, 725 F.3d at 679; *United States v. Griffin*, 150 F.3d 778, 785 (7th Cir. 1998).

B. *The District Court Did Not Abuse Its Discretion When It Quashed Hamdan's Subpoenas*

Hamdan argues that the district court abused its discretion by granting the government's motion to quash his subpoenas of the state troopers. As with other evidentiary determinations, we review the district court's rulings on a motion to quash subpoenas for an abuse of discretion. *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992); *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015). We will reverse the district court only "when no reasonable person could take the view adopted by the trial court." *United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009) (quoting *United States v. Khan*, 508 F.3d

413, 417 (7th Cir. 2007)). "A district court may exclude collateral or irrelevant evidence where its tendency to mislead and confuse the jury substantially outweighs its probative value." *Ozuna*, 561 F.3d at 738.

In this case, we cannot agree with Hamdan that the district court abused its discretion. Hamdan's proposed evidence was largely irrelevant to the issues at trial. The synthetic cannabinoid involved in the 2012 Wisconsin arrest was not XLR-11, the substance at issue here. The two incidents were remote in time and Hamdan's knowledge of XLR-11's illegality could have changed over the years. Additionally, the troopers' testimony regarding their own beliefs about the substance discovered in Hamdan's car during the 2012 arrest would not provide meaningful insight into Hamdan's mental state in 2014.

We also agree with the district court that the troopers' testimony could have caused confusion and prejudice: jurors could have easily lost track of the purpose for which Hamdan was introducing the troopers' testimony. Instead of listening for evidence of and insights into Hamdan's knowledge in 2014, jurors could view law enforcement officials' testimony with an "authoritative gloss." The district court's concerns were entirely reasonable, and given the tenuous connection between Hamdan's proffer and his knowledge in 2014, it did not err by quashing the subpoenas.

C. *The District Court Did Not Abuse Its Discretion by Denying Hamdan's Motion for a New Trial*

Hamdan similarly argues that the district court abused its discretion by denying his motion for a new trial because the district court's evidentiary rulings effectively deprived him of

his opportunity to present his theory of defense. Specifically, Hamdan claims that excluding his proposed evidence and quashing his subpoenas, the district court forced him to choose between presenting his theory of defense and testifying against himself in violation of his Fifth Amendment rights. We disagree.

We review a district court's rulings on a motion to grant a new trial for an abuse of discretion. *United States v. Peterson*, 823 F.3d 1113, 1132 (7th Cir. 2016). Our review of the district court's denial is "highly deferential, recognizing that the 'exercise of power conferred by Rule 33 is reserved for only the most extreme cases.'" *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017) (quoting *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016)).

Rule 33 provides that the district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). As we explained in *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989), "courts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial."

This is not a case where the district court's evidentiary rulings constituted errors that jeopardized Hamdan's rights. Hamdan was not deprived of his theory of defense. Hamdan's theory at trial included his claims that he did not know that the chemicals he had been processing since 2010 ever became illegal. Moreover, his counsel pointed out that the products Hamdan was manufacturing were previously sold at dollar stores, gas stations, and tobacco shops—a fact suggesting that

the spice product had been legitimate at one time. Most significantly, despite excluding some of Hamdan's proposed evidence and quashing his subpoenas to the Wisconsin troopers, the district court explicitly left the door open to the possibility that he could proffer evidence relevant to his knowledge of spice's legal status in 2014. The district court therefore did not prevent Hamdan from employing his preferred theory of defense. Rather, it permissibly declined to let him present evidence it deemed irrelevant, confusing, and prejudicial.

### III. CONCLUSION

The district court did not err by quashing Hamdan's subpoenas of the Wisconsin state troopers. The proposed testimony by the troopers about an arrest that occurred years before this case was irrelevant to Hamdan's mental state and would have likely been confusing to jurors and prejudicial. Similarly, the district court's evidentiary rulings did not deprive Hamdan of his right to present his theory of defense. AFFIRMED.