In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3272

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 17-cr-20024 — **James E. Shadid**, *Judge.*

ARGUED DECEMBER 1, 2021 — DECIDED AUGUST 8, 2022

Before MANION, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

BRENNAN, *Circuit Judge*. While on federal supervised release, John Johnson agreed to cooperate with local police. Federal prosecutors did not object, and his cooperation was allowed by a federal judge. Later, federal drug charges were brought against Johnson, which he argued should be dismissed under the cooperation agreement. But there was no federal non-prosecution agreement, and an agency theory did

not bind federal authorities under the cooperation agreement. The Government also did not suppress favorable evidence material to Johnson's defense. So, we affirm.

**I**

John Johnson was convicted of a series of state drug charges and received a lengthy sentence. He later pleaded guilty to a federal offense for distributing cocaine, which resulted in a 60-month prison sentence. In 2011, he was released from federal custody under supervised release. But on two separate occasions in 2014, Johnson sold cocaine to a Drug Enforcement Administration confidential informant. At that time, he was not prosecuted for either drug offense.

*The Proposed Cooperation Agreement.* Sixteen months later, Jonathan Jones and David Dailey, two Decatur, Illinois Police Department officers, approached Johnson on the street. The officers told Johnson they knew about his 2014 drug transactions and showed him incriminating evidence. They proposed that Johnson covertly assist local law enforcement in providing information about illegal drug activity and various crimes. Johnson agreed to cooperate in exchange for leniency, although he and the officers understood that the proposed agreement would need to be approved by the federal government in accord with a condition of Johnson's federal supervised release.

The proposed agreement was not reduced to writing, and the parties now dispute its terms. According to Johnson, he reasonably believed that the officers promised him immunity from *all* prosecution for the 2014 drug transactions, including federal immunity. The Government denies that anyone ever promised Johnson immunity from federal prosecution.

After Johnson agreed to cooperate, Decatur officers con-
tacted his federal probation officer, Gwen Powell, to request
federal permission for Johnson to cooperate. According to a
violation memorandum Powell later prepared for a revoca-
tion proceeding, the officers "requested permission for [John-
son] to cooperate with them and in exchange, no charges
would be filed against the offender."

Before seeking permission from the district court, Powell
informed Assistant United States Attorneys Jason Bohm and
Eugene Miller of the proposed cooperation agreement and re-
quested their position. Powell emailed Bohm that "Johnson
wants to cooperate and work with Decatur PD," to which
Bohm replied that he had "no objection." Bohm also for-
warded Powell's email request to Miller, who replied he
"ha[d] no objection to John Johnson's request to cooperate
with the Decatur Police Department."

After receiving approval from Bohm and Miller, Powell
emailed Judge Harold A. Baker of the United States District
Court for the Central District of Illinois. Bohm and Miller re-
ceived a copy of this correspondence. Powell's email in-
formed Judge Baker of Johnson's two controlled drug buys in
2014, and then stated:

> Decatur police officers want offender Johnson to
> cooperate with them and work as a confidential
> information. [sic] In exchange, Macon County
> will not likely charge and/or convict him for the
> drug related offenses in 2014 and will not con-
> vict him for a recent Driving with a Revoked Li-
> cense. I have discussed this matter with AUSA
> Bohm and AUSA Miller. Neither of us have any
> objections to Johnson cooperating with Decatur

> PD. As a condition of offender Johnson's super-
> vised release, he must not enter into any agree-
> ment to act as an informer or a special agent of
> a law enforcement agency without the permis-
> sion of the court. Please advise is [sic] you agree
> for Johnson to cooperate with the Decatur Police
> Department as a confidential informant.

In response, Judge Baker instructed Powell to "[g]o ahead and allow" Johnson to cooperate with the Decatur Police Department. At no point during Powell's communications with the United States Attorney's Office or Judge Baker did she ever request, or receive approval for, a federal non-prosecution agreement.

After receiving Judge Baker's approval, Jones and Powell separately contacted Johnson to inform him that the federal government had approved the proposed agreement and that Johnson's cooperation could begin.

*The Written Agreement.* Approximately two months later, Jones approached Johnson with a written Confidential Informant Agreement. According to Johnson, Jones stated that the document was a "formality" to memorialize in writing "the agreement we had already made and that had already been approved." The three-page document did not mention a federal non-prosecution agreement. It states that "[t]he Decatur Police Department/Macon County Sheriff's Office does not promise or agree to any consideration by a prosecutor or a court in exchange for [Johnson's] cooperation," and that Johnson had "no immunity or protection from investigation, arrest or prosecution" for any unauthorized conduct. Johnson also agreed "not to participate in any criminal activity."

Johnson testified that he signed the agreement without reading it, relying on Jones's representations that it was only a formality. Johnson also claimed that Jones did not review the terms of the written agreement with him prior to signing it. Jones disputed this, testifying at Johnson's revocation proceeding that he went over the form "line-by-line" with Johnson before they each signed it.[1]

*Federal Prosecution for the 2014 Drug Offenses.* Twice in 2016, Johnson tested positive for cocaine and thus violated the terms of his federal supervised release and cooperation agreement. He also admitted to not being honest with law enforcement about a previously undisclosed cocaine supplier in Chicago, from whom Johnson had purchased several kilograms of cocaine in 2016. The Decatur Police Department later acquired information that suggested Johnson was continuing to engage in cocaine trafficking while cooperating with officers.

In February 2017, the district court issued a warrant for Johnson's arrest for violating his conditions of supervised release. A federal grand jury indicted Johnson on two counts of distributing a controlled substance related to the drug deliveries in 2014.

Nearly two years later, Johnson moved to dismiss the indictment. He argued he had received federal immunity from

---

[1] Johnson was not represented by counsel at this meeting about the written Confidential Informant Agreement or previously when Decatur police first requested his cooperation in late 2015. Such representation might have helped resolve any genuine uncertainties about the scope of an agreement and its ramifications.

prosecution for the 2014 drug offenses through his coopera-
tion agreement with the Decatur Police Department. He relied
on his affidavit and Powell's memo, in which she wrote that
Decatur officers had told her "no charges would be filed
against the offender" in exchange for his cooperation.

Johnson also filed a motion to permit Powell to testify at
an evidentiary hearing and to produce her records, which in-
cluded Powell's notes taken while supervising Johnson and
related emails. The Government did not object. After review-
ing Powell's records in camera, the court provided the parties
with redacted copies, which included the emails between
Powell and Decatur officers, Bohm, Miller, and Judge Baker.
The court permitted Johnson to subpoena Powell to appear at
an evidentiary hearing.

The day before that hearing, Johnson filed a second mo-
tion to dismiss the indictment, this time as a discovery sanc-
tion. Johnson asserted the Government had not complied
with his discovery request to produce documents connected
with his cooperation agreement. He pointed to the redacted
emails the court provided to the parties from Powell's rec-
ords, contending the Government should have produced its
copies of the emails in response to previous discovery re-
quests.[2] Notwithstanding the late production of Powell's
emails, Johnson's counsel informed the court that the defense
was ready to proceed.

On January 7, 2020, the district court held an evidentiary
hearing, at which Powell and Johnson testified. In response to
questions about her memo, in which she had written that "no

---

[2] The United States Attorney's Office could not locate its copy of the emails
because of a three-year retention procedure.

charges would be filed against the offender" in exchange for Johnson's cooperation, Powell clarified that she understood the Decatur officers had promised Johnson prosecutorial immunity "by the state or the county if he fully cooperated." When asked whether she ever recalled telling a defendant "if they cooperated they would never be charged with a federal offense," Powell said she "[n]ever told them that." And when asked if she ever told this to Johnson, Powell responded no.

Johnson, on the other hand, testified that Powell had told him he would not face a federal "sanction[]" if he cooperated with the Decatur Police Department. Johnson also claimed that during their initial encounter, Jones had said Johnson would not face federal prosecution as part of the unwritten cooperation agreement. Johnson admitted that he had not spoken to anyone from the United States Attorney's Office about a cooperation agreement, and he testified he had signed the written Confidential Informant Agreement without reading it.

After Johnson's testimony, the district court concluded it "simply cannot find that there was a federal agreement not to prosecute." The court reasoned that, at most, "this record would support … a finding that the assistant U.S. attorneys had no problem supporting his cooperating with the state authorities. But … there's nothing in this record … to suggest that there was a federal agreement not to prosecute [Johnson] in Federal Court." On this basis, the court denied Johnson's first motion to dismiss.[3] Johnson's second motion to dismiss, which alleged the discovery violation, remained pending.

---

[3] The United States attempted to call Jones to testify and present evidence concerning Johnson's violations of the cooperation agreement, but

After the evidentiary hearing, Johnson sought further discovery relating to his cooperation agreement. The Government objected but provided Johnson with additional documents on March 13, including twelve pages of internal United States Attorney's Office emails reviewed by the district court in camera. The emails referred to Johnson's cooperation with the Decatur Police Department, along with Miller and Judge Baker's approval of the cooperation. But in response to inquiries about a federal non-prosecution agreement, Powell told the United States Attorney's Office in an email that, "[a]s for [sic] as I know, there was no agreement with the federal government that he not be prosecuted for the [2014] drug distributions."

Johnson insisted these additional emails contained relevant information pertaining to a federal non-prosecution agreement. So with court permission, he supplemented his second motion to dismiss for discovery sanctions, and he moved for reconsideration of the ruling on his first motion to dismiss based on a federal non-prosecution agreement.

At a hearing on April 16, 2020, the district court considered both motions. Johnson's counsel confirmed the court's belief that the record contained no "statements by an assistant U.S. attorney … that they're offering immunity to him on the

---

Johnson objected. The district court sustained the objection on the grounds that the issue of Johnson's compliance with the Confidential Informant Agreement was moot in view of the court's finding that no federal prosecutorial immunity existed. Jones later testified in a separate proceeding for Johnson's revocation of supervised release, where he recounted going over the written agreement "line-by-line" with Johnson and denied that he had told Johnson he would receive federal immunity in contravention of the written agreement.

federal charges." The court concluded that "the record in this case as it presently exists clearly indicates that … the federal government did not, either impliedly or expressly, make an agreement with the defendant that he would not be prosecuted. It's just simply not there." While the court again acknowledged Powell's memo that stated Johnson would not be prosecuted, the court recognized that Powell later "clarified and refuted" the suggestion that this included federal immunity. The court further observed that "the probation officer can't bind the U.S. Attorney anyway." In addition to finding that Johnson was not offered federal immunity, the court also ruled that Johnson could not have "reasonably … believed that the federal government was saying that they were not going to prosecute him." So, the district court upheld its denial of the first motion to dismiss.

The court also denied Johnson's second motion to dismiss as a discovery sanction. The cited email communications "work[] against the defendant, not in his favor," the court found, and "in any event, the defense has it now." As such, the court determined the United States had not committed a *Brady* violation.

After his motions were denied, Johnson entered conditional guilty pleas to each of the drug offenses in the two-count indictment. Johnson reserved his right to appeal the district court's denial of his two motions to dismiss the indictment. The district court sentenced Johnson to 180 months' imprisonment.

## II

## A

Johnson argues he was promised immunity from federal prosecution as part of the unwritten cooperation agreement with the Decatur Police Department, so the district court erred in denying his first motion to dismiss the indictment. "We review de novo the denial of a motion to dismiss an indictment and the court's factual findings for clear error." *United States v. Friedman*, 971 F.3d 700, 710 (7th Cir. 2020) (citations omitted). Under clear error review, "we will reverse 'only if we are left with the definite and firm conviction that a mistake was made.'" *United States v. Elizondo*, 21 F.4th 453, 473 (7th Cir. 2021) (quoting *United States v. Blake*, 965 F.3d 554, 558 (7th Cir. 2020)).

As the parties acknowledge, and as this court has long recognized, only federal prosecutors can grant a defendant informal immunity from federal prosecution.[4] *See United States v. Fuzer*, 18 F.3d 517, 520–21 (7th Cir. 1994) (concluding that an alleged promise of federal immunity in a plea agreement was ineffectual because "the United States Attorney's office was not a party to [the] plea agreement" and authorities from a federal agency were not acting as agents for the United

---

[4] In contrast, statutory immunity, also known as formal immunity, at 18 U.S.C. §§ 6001–6005, provides a mechanism by which the government may apply for an order granting a witness limited immunity in judicial, administrative, and congressional proceedings. U.S. DEP'T OF JUSTICE, CRIMINAL RESOURCE MANUAL § 716 (Jan. 17, 2020), https://www.justice.gov/archives/jm/criminal-resource-manual-716-use-immunity-transactional-immunity-informal-immunity-derivative.

States Attorney); *In re Daley*, 549 F.2d 469, 480 (7th Cir. 1977) ("Through the exercise of his inherent discretion, the federal prosecutor retains control over the nature and scope of immunity granted."); *see also United States v. Lilly*, 810 F.3d 1205, 1212–13, 1215 (10th Cir. 2016) (citing *Fuzer*, 18 F.3d at 520) (investigating authorities promising federal immunity must "receive[] permission or authorization from a governmental actor that actually possesses actual authority—notably, a federal prosecutor"); *United States v. Flemmi*, 225 F.3d 78, 87 (1st Cir. 2000) (noting that "informal grants of use immunity" are "the exclusive prerogative of the United States Attorneys"). This is so because the United States Attorney's Office is vested with prosecutorial discretion, and "the power to prosecute plainly includes the power not to prosecute." *Flemmi*, 225 F.3d at 87.

The United States Attorney's Office did not directly or indirectly authorize a federal non-prosecution agreement here. Johnson admits he did not speak to anyone from the United States Attorney's Office about his cooperation. In fact, the policy of the United States Attorney's Office for the Central District of Illinois prohibited the authorization of transactional immunity deals.[5] Johnson nonetheless insists that the string of emails between federal prosecutors and Powell show the Government acquiesced to a federal non-prosecution agreement.

---

[5] Transactional immunity precludes prosecuting an offense, while use immunity precludes the use of a defendant's proffered statement against him. *United States v. Eliason*, 3 F.3d 1149, 1152 (7th Cir. 1993); U.S. DEP'T OF JUSTICE, CRIMINAL RESOURCE MANUAL § 717 (Jan. 17, 2020), https://www.justice.gov/archives/jm/criminal-resource-manual-717-transactional-immunity-distinguished.

The emails do not show a federal agreement, and expressly state that Johnson's cooperation was with local authorities. In response to Powell's email stating that "Johnson wants to cooperate and work with Decatur PD," Bohm replied he had "no objection." Miller was specific: "I have no objection to John Johnson's request to cooperate with the Decatur Police Department." Bohm and Miller were copied on an email from Powell to Judge Baker, which stated that in exchange for Johnson's cooperation, "Macon County will not likely charge and/or convict him for the drug related offenses in 2014." And in advance of trial, when the United States Attorney's Office asked Powell if she knew of any non-prosecution agreement between a federal prosecutor and Johnson, Powell stated "there was no agreement with the federal government that he not be prosecuted for the drug distributions."

As these emails show, Powell did not seek approval for a federal non-prosecution agreement, and the United States Attorney's Office did not expressly or implicitly suggest that Johnson would receive federal immunity. Johnson conflates federal approval of a Decatur Police Department cooperation agreement involving state and county immunity with consent to a federal non-prosecution agreement. But the two are distinct, and there is no evidence that the United States Attorney's Office approved the latter.

Without the Government actually granting federal immunity, Johnson is left arguing that the federal government is bound to the cooperation agreement under an agency theory. Recall that Powell and Jones had no actual authority to bind the United States Attorney's Office. As a probation officer, Powell was an employee of the federal judiciary, which lacks authority to bind federal prosecutors to a non-prosecution

agreement. *See United States v. Hollins*, 847 F.3d 535, 541 (7th Cir. 2017). State and county officials like Jones also lack such authority, as "the federal government [is] not bound by an agreement made by the defendant and state agents." *Staten v. Neal*, 880 F.2d 962, 966 (7th Cir. 1989).

Johnson invokes the "doctrine of inherent agency," citing *Neal*. According to Johnson, he reasonably believed he would receive federal immunity because Jones and Powell "expressly told him" so.

Johnson's theory fails for three reasons. First, there is insufficient evidence to overturn the district court's findings that Johnson was not offered, and could not have reasonably believed he was offered, federal immunity. Powell and Jones each testified they did not promise Johnson immunity from federal prosecution. No federal prosecutor spoke with Johnson about a federal non-prosecution agreement. The emails between Powell and the United States Attorney's Office are devoid of any request for, or approval of, any such agreement. And Johnson signed the three-page Confidential Informant Agreement, which expressly stated he would not receive immunity from prosecution.

In addition to his affidavit, Johnson relies on Powell's memo, in which she recounts that Decatur officers told Johnson "no charges would be filed against the offender" in exchange for his cooperation. But Powell later testified she understood that Decatur officers told Johnson he would receive immunity "by the state or the county," not the United States. Without more, we are not left with a "definite and firm conviction" that the district court erred in determining Johnson was not offered, and could not have reasonably believed

he was offered, federal immunity. *Elizondo*, 21 F.4th at 473 (quoting *Blake*, 965 F.3d at 558).

Second, inherent agency authority does not apply here. As we stated in *Neal*, "[t]he doctrine of inherent agency authority presupposes that one party is an agent of another party, the principal, and that it is this agency relationship which causes the third party to assume that the words and actions of the agent are also those of the principal." 880 F.2d at 965. Neither Powell nor Jones was an agent of the United States Attorney's Office because federal prosecutors did not approve a federal immunity deal, vest Powell and Jones with authority to make one, or even request that Powell or Jones relay their non-objection of the Decatur cooperation agreement to Johnson.[6] The principle of apparent authority[7] does not help Johnson either

---

[6]    At most, Powell might have acted as an agent of the district court. Powell was a federal judicial employee, the district court held exclusive authority to approve Johnson's cooperation while on federal supervised release, and Judge Baker instructed Powell to "[g]o ahead and allow" Johnson to cooperate with the Decatur Police Department—an instruction that could be viewed as Judge Baker authorizing Powell to communicate his approval of the agreement to Johnson.

But approval by the United States Attorney's Office of Johnson's cooperation was not necessary, and neither Bohm nor Miller asked Powell to relay their non-objection of the agreement to Johnson. Because the United States Attorney's Office did not manifest assent to Powell for her to act on its behalf, no agency relationship existed between them. *See* RE-STATEMENT (THIRD) OF AGENCY § 1.01 (AM. L. INST. 2006).

[7] Although Johnson does not explicitly argue for apparent authority, his arguments under inherent authority are similar because they are based on what Jones and Powell told him. Both parties rely on *Lilly*, which dealt with apparent authority. 810 F.3d at 1210. And the Restatement Third of Agency abandoned use of "inherent agency power" because the concept was encompassed by other doctrines, including apparent authority, which

because he had no contact with any federal prosecutor and did not interpret manifestations by the United States Attorney's Office as evidence that Powell or Jones were authorized to offer him federal immunity. *See* RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. c (AM. L. INST. 2006) ("A belief that results solely from the statements or other conduct of the agent, unsupported by any manifestations traceable to the principal, does not create apparent authority.").

Third, even if Powell or Jones possessed inherent agency authority or apparent authority, neither doctrine is sufficient "to bind the federal government to a contract; unless the agent had actual authority, any agreement is ineffectual." *Urso v. United States*, 72 F.3d 59, 60 (7th Cir. 1995); *see also United States v. Long*, 511 F.2d 878, 881 (7th Cir. 1975) ("'The government is not bound by acts of persons who never have been … its agents.' This remains horn book law." (quoting *Newman v. United States*, 28 F.2d 681, 682 (9th Cir. 1928))); RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. g (AM. L. INST. 2006) ("The doctrine of apparent authority generally does not apply to sovereigns …. [T]hird parties who deal with national governments, quasi-governmental entities, states, counties, and municipalities take the risk of error regarding the agent's authority to a greater degree than do third parties dealing through agents with nongovernmental principals."). "If the rule were otherwise, a minor government functionary hidden in the recesses of an obscure department would have the power to prevent the prosecution of a most heinous criminal simply by promising immunity in return for the performance of some act which might benefit his department." *Lilly*, 810 F.3d at 1211

---

suggests that discussion of apparent authority is appropriate. RESTATEMENT (THIRD) OF AGENCY § 2.01 cmt. b (AM. L. INST. 2006).

(quoting *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1236–37 (5th Cir. 1979)). A contrary rule would also risk violating federalism principles and the separation of powers, as states and non-executive federal officials could bind the Executive Branch to agreements it alone has the power to make. And because there is no actual authority here, any inherent or apparent authority assertion is ineffectual.

On the topic of agency and the authority to grant federal immunity, both parties invite us to examine *United States v. Lilly*, 810 F.3d 1205 (10th Cir. 2016). There, the defendant argued she was immune from federal prosecution because Wyoming and DEA authorities purportedly promised her immunity in exchange for her cooperation. 810 F.3d at 1209–10. Assuming the defendant was promised such immunity, the court nevertheless held that "neither agency had the authority to promise Ms. Lilly federal immunity, and thus any purported agreement is unenforceable against the United States." *Id.* at 1210. "This rule," the court explained, "is grounded in principles of sovereignty and prosecutorial discretion." *Id.* at 1212.

Johnson responds that *Lilly* discussed a "fundamental-fairness exception" to this rule, which has been recognized by some federal circuit courts. *Id.* at 1215–16 That exception binds the United States Attorney to a non-prosecution agreement, even when the United States Attorney was not a party to the agreement, "when the government's noncompliance with an unauthorized promise would render a prosecution fundamentally unfair." *Id.* at 1215 (quoting *Flemmi*, 225 F.3d at 88 n.4). But this exception is "'narrow'" and "'seldom-seen,'" and "exclude[s] from its ambit the mine-run (i.e., typical) case." *Id.* at 1216 (quoting *Flemmi*, 225 F.3d at 88 n.4).

These mine-run cases include instances where a defendant "complains that investigators made unfulfilled promises that the defendant would not be prosecuted or would receive other favorable treatment relative to potential criminal charges if the defendant truthfully disclosed information regarding an investigation … or actively assisted the investigators in efforts aimed at catching other possible criminals"— the exact facts of this case. *Id.* at 1217. "Accordingly, because [Johnson's] case is mine-run, it is not a suitable candidate for application of the fundamental-fairness exception." *Id.*

Similarly, Johnson points to this court's decision in *United States v. Cahill*, which stated that "[t]he prosecution of a defendant based on direct or indirect testimony taken after a specific promise of immunity … warrants dismissal of an indictment." 920 F.2d 421, 426 (7th Cir. 1990) (involving use, not transactional, immunity). But *Cahill* involved an alleged promise of immunity by a federal prosecutor to the defendant, so it is distinguishable. *Cahill* does not suggest that the United States Attorney's Office is bound by a state or judicial official's promise of federal immunity.

In sum, no evidence suggests the United States Attorney's Office ever considered or approved a federal non-prosecution agreement. There is also insufficient evidence to reverse the district court's findings that Johnson was not promised federal prosecutorial immunity by either Powell or Jones. Even if they had made such promises, Johnson cannot rely on theories of inherent or apparent authority because Jones and Powell were not agents of the United States Attorney's Office, and federal prosecutors did not make manifestations to Johnson that Jones or Powell were authorized to act on their behalf. And even if Jones or Powell acted with inherent or apparent

authority, principles of dual sovereignty and the separation of powers prevent such unauthorized promises from binding the Executive Branch. We thus conclude the district court did not err in denying Johnson's first motion to dismiss based on federal immunity.

**B**

Johnson also contends the district court wrongfully denied his second motion to dismiss the federal indictment as a discovery sanction. "When reviewing a court's decision granting or denying a motion to dismiss an indictment because of an alleged *Brady* violation, 'we look only to see if the district court abused its discretion.'" *United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) (quoting *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019)). Under this standard, "[w]e will reverse the district court only when no reasonable person could take the view adopted by the trial court." *United States v. Bebris*, 4 F.4th 551, 559 (7th Cir. 2021) (quoting *United States v. Hamdan*, 910 F.3d 351, 356 (7th Cir. 2018)).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), law enforcement officers "must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Jones v. York*, 34 F.4th 550, 558 (7th Cir. 2022) (quoting *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007)). "To succeed on a *Brady* claim, a defendant bears the burden of proving that the evidence is (1) favorable, (2) suppressed, and (3) material to the defense." *United States v. Edwards*, 34 F.4th 570, 587 (7th Cir. 2022) (quoting *United States v. Walter*, 870 F.3d 622, 629 (7th Cir. 2017)).

Johnson's evidentiary challenge fails under each *Brady* element. To begin, none of the purportedly suppressed

evidence was favorable to Johnson. The emails between Powell and Decatur officers, Bohm, Miller, and Judge Baker do not mention a federal non-prosecution agreement. In fact, in some of her emails, Powell denies any knowledge of a federal immunity deal. These facts support the district court's finding that the belatedly produced emails "work[] against the defendant, not in his favor."

Further, no evidence was "suppressed" within the meaning of *Brady*. As Johnson's counsel recognized at oral argument,[8] our case law provides that "[d]elayed disclosure alone does not 'in and of itself constitute a *Brady* violation.'" *Barr*, 960 F.3d at 916 (quoting *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)). "Instead, the disclosure must come so late as to deny the defendant 'effective use' of the evidence during the relevant proceeding." *Id.* (quoting *United States v. Walton*, 217 F.3d 443, 451 (7th Cir. 2000)). Johnson had access to the first batch of contested emails contained in Powell's records approximately one month before the January 2020 evidentiary hearing.[9] Moreover, Johnson obtained the additional twelve pages of emails on March 13. The district court then allowed Johnson to supplement his motion for discovery sanctions and to file a motion to reconsider the motion to dismiss based on federal immunity. By the time of the April 16 motion hearing, all the contested emails were available to Johnson and had been considered by the district court. Johnson also argues the Government withheld text messages

---

[8] Oral Arg. at 15:15.

[9] While Johnson argues the United States Attorney's Office failed to produce its copy of these emails due to data retention procedures, the probation office was able to produce its copy of those same emails for Johnson's use.

between Johnson and Jones. But those messages were also in Johnson's possession and the district court considered them as part of Johnson's second motion to dismiss the indictment as a discovery sanction. The district court acted well within its discretion in finding that Johnson's access to the emails and text messages foreclosed a *Brady* challenge.[10]

Last, none of the belatedly produced emails were material to Johnson's defense. "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (alteration in original) (quoting *Cone v. Bell*, 556 U.S. 449, 469–470 (2009)). Because the district court had an opportunity to examine the evidence, we need not speculate as to whether the emails would have produced a different result. The court twice determined there was insufficient evidence to support Johnson's federal immunity defense, and we cannot say that "no reasonable person could take the view adopted by the trial court." *Bebris*, 4 F.4th at 559 (quoting *Hamdan*, 910 F.3d at 356).

\* \* \*

For these reasons, we AFFIRM the district court.

---

[10] In his reply brief, Johnson argues for the first time on appeal that the Government violated *Brady* by not requesting Jones's written notes documenting his interactions with Johnson. But Johnson did not raise this issue in his opening brief, and "[a] party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).